May it please the Court, good morning, Your Honors. My name is Blake Summers. I represent the appellant, William Talley, in this case. We're here on Mr. Talley's appeal from the dismissal of his 2255 motion that he filed to set aside his judgment entry and sentence Western District of Tennessee at Memphis. Before I get going, I don't think that we probably did this before I got here based on my late arrival, but could I reserve two minutes for rebuttal, please? You may. Thank you very much, judges. This case is about one thing. Whether or not Mr. Talley received the ineffective assistance of counsel when his appointed counsel during his direct merits appeal failed to challenge the district court's refusal or declination to provide a lesser included offense instruction to the jury. Based on the applicable law at the time, based on the knowledge that his counsel had, we would submit that his counsel was actually ineffective, that she was not functioning as counsel under the Sixth Amendment, and that this resulted in prejudice to Mr. Talley. Now, in candor, I don't think we see a lot of ineffective assistance of counsel claims get granted, but we've got it in this case, Judge. We don't see many ineffective assistance of counsel claims raised after an Anders brief either. That's actually the issue, Judge, and that's why we're here today is the Anders brief is the problem. I think the court is aware what happens is Mr. Talley has counsel. He gets picked up for traffic violation. Subsequently, after all the dust settles, he had a 922 felon in possession count and then two counts of possession with intent to distribute, one for a very, very small amount of marijuana and another for a smaller amount of cocaine base. At trial, Talley testifies. He says, I didn't know about the gun. I didn't know about the marijuana. I did know about the cocaine base, but I wasn't intending to sell it to anybody. I was intending to use it on my own. I want to have energy when I go to the club later. His counsel requests a lesser included offense instruction. The court refuses to give it. The court says, A, I think it's going to be confusing, and B, he kind of puts the jury in the position that they can either acquit across the board or convict across the board, which is going to be problematic because obviously the jury has testimony that he did knowingly possess a controlled substance. At the conclusion of the trial, Talley is found guilty on the gun, guilty. He does say, doesn't he, that if it's only for his own possession, you should acquit. I would agree with that, Judge. Yes. I don't disagree with that. So I understand where the court is coming from in terms of the fact that that portion is there, but in terms of the instruction on the actual lesser included offense of simple possession or possession without the intent to distribute, that jury instruction is not given. After his conviction, Talley appeals. The same counsel who represented him at trial represents him on appeal to the Sixth Circuit Court of Appeals and proceeds on the merits. However, she moves to withdraw and files an Anders brief. Not only does she not brief this issue regarding the lesser included offense instruction, she fails to even raise it as a potential issue in her Anders brief. And based on the law as it stood at that time, Judge, that was absolutely ineffective. That is the crucial portion of Mr. Talley's case. And the law at the time that this case was in front of the Sixth Circuit panel on the merits was extremely clear. We have United States v. Munger, which I think is 2000 or maybe 1999. It was a four-part test for determining whether a lesser included offense instruction should be given. It's whether there's a proper request that got made, if the elements are identical, if the evidence would support a conviction of the lesser offense, and if the element or elements are present in Talley's case. The motion is properly made, or at least I don't know that anybody's objected to the manner or means or time in which it was made. The elements of the offense do support a conviction for both. That's case law straight out of this circuit. So if you've got simple possession, it is lesser included possession with intent to distribute. The last two elements are also met by Talley's testimony at trial. Talley testifies that he's got this cocaine base and that he intends to use it. He testifies, he admits on the stand in front of a jury, he's guilty of simple possession. Compared to Munger though, doesn't the court in Munger make a good bit of the fact that as opposed to most distribution cases, the coke was all in one bag, the extra bags were not in his possession, it was in his apartment rather, which had some commonality rather than on his person. Here, all of those elements, he's got the gun and the scales and the drugs in individual bags in his possession in the car or on his person, right? Right. So the question, you know, under an abusive discretion standard for giving an instruction, where was the court abusing its discretion in saying that the evidence wouldn't support that? That basically is going to get me to the end of my argument, so I appreciate that. You're welcome to fast forward or as you wish. I mean, that's the issue. First of all is when we're looking at whether or not to give a lesser included offense instruction, we're not looking at credibility and we're not weighing evidence. We're just looking at whether a rational jury could take that testimony and on the basis of that testimony, render a verdict on the lesser offense. The second thing is, there's a lot of evidence in the record which I think people are going to say, you know, this points in the direction of somebody trafficking in narcotics or somebody intending to distribute these things, but that's just one theory of the case. If you look at the other side, okay, it's in seven individually wrapped bags, so maybe Talley's intending to distribute it or maybe he bought it from a drug dealer who sold it to him in seven individually wrapped bags. He's got scales, so maybe he's intending to weigh it before he distributes it or maybe he's a habitual user and he wants to weigh the drugs before he uses them. There is evidence in the record all over the place where a rational jury, just a rational jury could take this and say, you know, I think he did have it. I think he admitted that he had it, but I don't think he intended to sell it to anybody. And the jury was obviously paying attention to Talley because they convicted him on the gun, they convicted him on the cocaine base, but they did not convict him on the marijuana. So they're paying attention and if they had the opportunity to say, I do think that you had this they wouldn't have been faced with that choice that the court put them in that was kind of discouraged by the court in Munger. One thing about Munger... It was saying the jury was paying lots of attention and therefore they were able to distinguish the marijuana, but they weren't able to follow the instructions on the cocaine because if they had believed that, they were instructed it to the extent that they would have acquitted him. What I think is the problem is that the jury doesn't really have that option and we all have you know, jury members sometimes get frustrated with somebody who's going to take the stand, admit guilt on something, because he doesn't admit guilt on the marijuana. He says that stuff isn't mine, but he does claim the cocaine base. And so you have a jury put in a difficult position where they're going to say, you know, now we have somebody... On the marijuana, he said it wasn't even his? He said he had no knowledge of the marijuana or the gun. They obviously didn't believe it with respect to the gun, but at least there's a certain sort of sure you might have it for your personal use, but the crack in different bags is not believable. Here's the ultimate thing on all of this. I think the court can see that the lesser included offense instruction is at least an issue. I think the amount of argument and the amount of discussion that we're having on the fact that it should or should not have been given is definitely in there. We're not on Mr. Talley's direct appeal. What we're here to talk about today is the fact that when he comes to the Sixth Circuit on his merits appeal with the same attorney who represented him at trial, with the same attorney who asked for the lesser included offense instruction, with the same attorney who didn't get it, with the same attorney who the judge made the decision and the jury rendered the verdict, comes to the court and says this isn't an issue. Then the second part would be prejudice, where the standard is that it's probably would have had a different verdict to the extent that it was not functioning as counsel. It's a pretty high standard on this evidence, isn't it? I don't disagree, but I think the case law in this, I agree that the standard is high. What I would put to the court though is that in this particular instance, this standard is met. The law supporting the lesser included offense instruction is so clear. But munger isn't about ineffective assistance and prejudice. It would be about the question of was it a reasonable argument. And unquestionably it was a reasonable argument to raise and it should have been raised. In terms of prejudice, the two things I would obviously note for the court, one is if the jury gets its instruction, they have now this other option and we have a jury that's clearly divided in what they want to do with Mr. Talley. When you have somebody that has possession of one thing and maybe not another, claims he does have one thing, but he doesn't have it for the intent to do something. There's no evidence the jury was divided. The verdict was divided because they considered the evidence. The other portion of it is in terms of the sentencing that Mr. Talley receives, because of the fact that he is convicted of this intent to distribute offense, he becomes a career offender. That increases Talley's criminal sentence by, I'm not a probation officer, so I always have to couch that in terms of I'm not sure about the guidelines, but I would say at least 10 years. He gets sentenced at a level 34 criminal history, 6, that gives him a 262-month sentence. The way I'm working this out, I think he might be at 26 under other terms, which would put him at 137. That's at the high end. 262 is at the low, 137 is at the high end. We're talking a difference of 10 and a half years. So on your submission, if you were to be successful, they would, what, have to re-sentence him without that, but could they also retry him? Because you'd simply be reversing that part of the conviction, wouldn't you? Or would you have to retry the whole case? Well, the portion of remedy here is something I've been thinking about really since I submitted my briefs, because usually I like to say, you know, reverse and remand. My thought has been so far, reverse, yes, remand to where? I think procedurally, maybe remand to the district court for a full hearing on his 2255 motion. I mean, that might be the first step. Although if the court is in full agreement with Mr. Talley's arguments, I think you have, as a court, the opportunity to grant more substantive... Well, I mean, on the 2255, why, what more would the district court do on the 2255? On your submission, he was simply wrong, and if we're going to agree with you, it's not there's something you didn't do procedurally or more evidence is you're wrong. You have to grant the 2255, which normally is retrial across the board, wouldn't it? Which I would agree with. The thing that I would expect most likely to hear from the United States Attorney's Office would be that in a situation like this, because there was no hearing given below, the record hasn't been fully developed in terms of Ms. Good and potentially whether her failure to challenge on appeal the lesser-included offense instruction could have been some sort of reasonable trial strategy. I don't want to talk myself out of a new trial here, but in candor to the court, that might be where we have to go. Although, again, your submission is not that there was something wrong in not having a hearing. No. That's sometimes raised as an argument, but that's not your argument here either. I mean, I think, at least in the record that I see, the it wasn't. It did prejudice tally. It was ineffective. We should have a new trial. The question that I think the court eventually gets into is if you're going to grant substantive relief, does it go back to the merits panel at the Sixth Circuit or does it go straight to the district court for a new trial at which the lesser offense instruction can be given? So what you might say is that all that he gets is a new appeal. Right. And the fashioning of a remedy in this particular instance is one that I think has kind of plagued me ever since I submitted the briefs in this manner. I figured we would need to talk about. So I think those are really the three options. Back to the district court on 2255, back to the panel on a new appeal, or back to the district court for an actual new trial. Okay. Thank you, counsel. Any other questions? Judges? All right. You'll have your two minutes for rebuttal. Thank you, judges. Good morning. May it please the court. My name is Daniel French. I represent the United States in this matter. And just picking up on what you said, Judge Boggs, I am so different from Monger in one way because we are dealing with the ineffective assistance of counsel standard. We're not dealing with abuse of discretion at this point. And so the question is, was Ms. Good, was it objectively unreasonable for her? Did she cease functioning as counsel under the Sixth Amendment when in her Anders brief she failed to raise this jury instruction issue? And I don't think the jury instruction issue is as clear cut as counsel. Is it failing to raise it as one of the not raised issues? Or is it failing to not file an Anders brief and go full bore on appeal? I guess it's both, really. I thought it was really the latter. Yeah, really. Well, first they're saying she should have just raised it on appeal. And then I think the second part of the argument is, at the end of the day, it's a potential issue if she saw that it was something she wasn't comfortable bringing up. But looking at that, when we look at this issue about the jury instruction, unfortunately this standard, this four-point standard, we have to get to whether the instruction, I guess, we kind of have to look at that to see whether the court did in a sense abuse its discretion and what was the likelihood of success on appeal. And Mr. Summers is correct. The first two elements of this four-part we're not contesting those. Clearly, Ms. Good made a proper request and the elements of the two offenses are identical. The third and the fourth elements, though, the one that would require the evidence to support a conviction on the lesser included and that the proof is sufficiently disputed so that a rational jury could acquit on the possession with intent and convict him on the lesser, I think that's where it gets tricky when we look at this standard. The court is not supposed to weigh the evidence when it looks at the standard and determines whether to give the instruction, but it is supposed to make some kind of determination in its discretion whether there is sufficient evidence. And the problem is the evidence that's being pointed to is Mr. Talley's testimony. And this court, the Sixth Circuit, on appeal from the Anders brief found Mr. Talley's testimony to be materially false and to be completely implausible. The court said that in upholding an obstruction of justice enhancement that was given to Mr. Talley based on his testimony. And the reason that the court found his testimony to be implausible were the same as the district court's reasoning. Basically, Mr. Talley, when he testified, he claimed that the officers forcibly removed him from the vehicle despite what the officers said. He claimed that there were six or seven police cars on the scene when this was just a routine traffic stop. He claimed that the officers... He claimed that the claim that she did raise as to suppression of evidence would have been based on his view of the stop. That's correct. That's correct. And the other important stuff is what he said during his testimony really supported the intent to distribute with what he had on his person. Of course, he denies the marijuana. That's because he was going to give it to his girlfriends for a little special drink? Well, I don't think he... I don't know if he actually said he was going to do that. He says he uses it to get energy when he goes to the club. He said he was going over to a hotel room to pick up a lady friend. But the other things he... When he starts talking about what's in the car and what was on his person, he claims that he had the scales in the car to weigh things up. He denies, of course, knowledge of the marijuana and the firearm. But like Judge Boggs, like you noted, the marijuana was in one bag solely. He couldn't deny the crack cocaine because it was on his person. It was on his person with $177 in cash. Now, during his testimony, he claimed he actually had $700 in cash on his person. Without explaining where that went, I guess he was trying to imply the officer stole it. And of course, he claims that earlier in the day he only had $500 in cash, so he fails to account how he made $200 between when he went to someone's house and then ended up at the traffic stop. So all these elements taken together, you start to really question his testimony. The jury was also allowed to hear that he's a multiple convicted felon and that he, in fact, lied about where he was staying at the time. He claimed at one point during his testimony that he lived at the motel that he was going to. And then he later admitted that he really was living at somebody else's house and that he had the motel room for things on the side. That's all the request for the lesser included. Was the analysis the best that it could be? No. But Ms. Good, looking at the implausibility of her client's testimony, I don't think they've shown that it was objectively unreasonable for her not to raise that claim. You can't just get on the stand and say that drugs magically appeared in my pocket and then get the lesser included instruction. The judge has to look to see if a rational jury would have found them guilty on the lesser and not guilty on the actual possession with intent. In this case, the jury did listen to the defendant, as Mr. Summers said, and they didn't believe him. I think they used their common sense, like you said, Judge Boggs. They used their common sense with the marijuana. They said, I got three and a half grams of marijuana in one sole bag sitting under the seat out of view. On the other hand, I have a pistol that the grip is sticking out from under the seat that he could have seen. And then on his person, I've got seven individual bags of crack cocaine packaged for distribution, along with $177 in cash, as well as digital scales and baggies used for packaging in the rear front passenger side pocket. So at that point, the jury convicted him. And as the court noted, they were told that if they believed he only possessed, they could have acquitted him, and they didn't. In this case, just lastly, with regards to Monger, this case is also different from Monger in that the facts in Monger are very different from this case. In Monger, you had a situation where the crack cocaine was in one bag on the defendant. There were no items consistent with distribution found on him. The police ultimately found, I believe, a scale in an apartment that he shared with other individuals who also had been arrested for drug sales. And then they found some baggies in a community dumpster that they tried to tie to him. In Monger, it says, and I hadn't focused on this, the government failed to lay an adequate foundation for the admission of the scales and the cellular phone. I take it that means that didn't come into the trial, even though it's now being raised as part of the government side? With regards in Monger? Monger. In Monger, the way I understood it, just reading it, is that they did go into evidence, but they just didn't have a witness explain why those items were relevant. The panel was, I didn't know whether they were making a legal judgment that that was evidence that shouldn't have been considered when it says, the government failed to lay an adequate foundation. I took it to mean that the government failed to explain how those could support distribution, but I could be incorrect. But another thing I think that the court seized on in Monger is that the government's own witness testified under oath that the amount of crack cocaine and the way it was packaged could be consistent with personal use. So the jury not only heard from the defendant that it was personal use, but also heard from the government's own witness. So when they came together, the court said, well, this was an abuse of discretion. The court should have given the instruction at that point, and the court unfairly weighed the evidence rather than determining whether it was sufficient. So I think that's how we distinguish Monger in this case from the current case. And also the fact, again, that we're using whether this was objectively unreasonable. And lastly, just to address the prejudice element, Judge Boggs, you brought up a good point here. Again, the defendant has to show that even if it was an objectively unreasonable action, not to raise this on appeal, that he would have absolutely won on appeal on this issue. To be absolutely, it has to be probable? Probable that he would have won on appeal. And without getting too far out in the weeds on that, I would submit, based on what we've gone over here about abuse of discretion, I don't know if they've shown that. Again, Monger, I think, can be narrowed sort of to the facts of the case that were before the court there. And these are just completely different facts. And so based on that, if the court has any other questions. Just let me ask you this, because when you were just raising the, what's the connection between the standard for could the jury find something, which is what lets you get the lesser included offense, and the prejudice standard? That is, is the, that even if the jury could have found it, if we think it's pretty unlikely, then it wouldn't meet the prejudice standard? Or are they similar? What do you think? I think so, Your Honor. I think they have to show that, you know, but for this, that they would have prevailed. If they had, well, I mean, really, I guess we're not even dealing right now with whether they, what the jury would have done if they had the instruction. We're more or less dealing with whether it was proper for the court not to give the instruction. Well, but there's that. But in order to be ineffective assistance, this is not like Munger on direct appeal. You're ineffective assistance. Then you have to show prejudice. And is the different result, a different result at trial? Or a different result on appeal? I think it's, respectfully, a different result on appeal. I think that's what, I think that's what's being argued here. Is that if she had appealed this, it was ineffective for her not to appeal this. And if she had appealed this, it was probable that the conviction would have been reversed. It was a structural error. And that it would have gone back to trial at that point. And, well, and I will say this, dealing lastly, as I'm thinking of this, with what the remedy should be if the court does side with Mr. Talley in this instance. Mr. Summers is correct that it's our view at this point that if the court is going to side with Mr. Talley and find that the 2255 was inappropriately denied, that it be remanded for an evidentiary hearing on the 2255, which would allow the government at that point to explore, I guess to seek a waiver of attorney-client privilege with Ms. Good. And at that point, have her discuss any conversations she had with Mr. Talley about his appeal. What her thoughts and processes were. Moving forward with the appeal. And if we didn't agree with that, would it be to remand for a new trial or a new appeal? I think it would be to remand for a new appeal, Your Honor. At that point, Mr. Talley should be given the benefit, I think, to appeal the issue and let the Sixth Circuit decide at that point whether the instruction should be given. Because I really think that's the issue here about what was ineffective. Any other questions, counsel? All right. Thank you. Thank you. We have two minutes for rebuttal. Mr. Summers. Thank you very much, Your Honors. I'll be extremely brief and raise only two issues in rebuttal. One being, we've talked a lot about Monger. Monger? I don't know if I'm saying it with a soft or hard G. But either way it is, we've talked a lot about it. I think, is this case necessarily every single fact is the same as Monger? No, it's probably not. But there's some substantial similarities between that case and this one. And in some respects, Mr. Talley's case is better than the case in Monger in order to get a lesser included offense instruction. There are less drugs. And like in Monger, there's no direct evidence. Everything is circumstantial. So I don't think that you, as an attorney or a court, could just say Monger this and then something else. I don't think there's necessarily a one-to-one correlation. But I think it does have some value to what we're looking at. And I think the fact that at the time of Mr. Talley's direct appeal, Monger had already been decided for a number of years, is what makes the ineffectiveness so clear, at least in terms of what we're presenting. The only other issue, and we didn't really talk about this, nor did the government at oral argument, there were some waiver issues that were potentially raised at some point based on Mr. Talley not bringing this up on direct appeal when he filed his response to his Anders brief. Does the court want to engage in any of that? We raised that in our briefs in addressing, in reply, why we thought waiver would not be appropriate of this issue. But I didn't know if the court had any questions about that while we were here. I didn't immediately, although from a kind of, you know, when somebody files a pro se brief in response to an Anders, it seems a little hard to tax them with a law school quality. At the same time, it gives you a little feeling that it wasn't something he was outraged about. I understand what the court is saying. It's a legal standard. I don't know where it cuts. You did give us some evidence on that, and we can look at it. Anything else, judges? Okay. Thank you very much, Judge. And we do appreciate your taking this under the Criminal Justice Act. It's a tribute to our system of justice, and if you were to get a remand, it might give you some more business then. We don't know. I appreciate the opportunity. But in any event, we do appreciate that. The remaining cases will be submitted on the briefs, and you may adjourn court.